# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL DEMOND STARKS # 374268,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 3:15-00358** |
| | ) | **Judge Nixon/Brown** |
| **WILSON COUNTY JAIL, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**To:  The Honorable John T. Nixon, Senior United States District Judge**.

## REPORT AND RECOMMENDATION

The Magistrate Judge **RECOMMENDS** for the reasons explained below that: **1)** defendants' motion to dismiss (Doc. 22) be **GRANTED**; **2)** this action be **DISMISSED WITH PREJUDICE** as to all defendants with respect to plaintiff's federal law claims; **3)** the court **DECLINE TO EXERCISE** its supplemental jurisdiction over plaintiff's state law claims, and those claims be **DISMISSED WITHOUT PREJUDICE** as to any relief plaintiff might be entitled in state court; **4)** dismissal of this action **COUNT AS A STRIKE** under 28 U.S.C. § 1915(g); **5)** acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; **6)** any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I.  INTRODUCTION
### and
### BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, was a prisoner in the Wilson County Jail (WCJ) when he brought this action on April 1, 2015 under 42 U.S.C. § 1983.  (Doc. 1)  This cause of action stems from two assaults against plaintiff by fellow inmate Kerry "Mark" Sellers while the two were incarcerated in WCJ.  The original complaint sued the following defendants in both their individual and official capacities: WCJ, inmate Sellars, Sheriff Robert Bryan, Capt. David Bennett,

Lt. Doug Whitefield, Lt. Penny Shoemake, Sgt. Craig Brown, Cpl. Matt Apple, Judicial Commissioner Stacy Swindell, Officer Jason Denson, Officer Floyd Bennett, Officer Tammy Rolin, and Officer Ben Smith.  (Doc. 1, pp. 18, 26-41 of 45)  Plaintiff moved to amend his complaint on April 8, 2015.  (Doc. 3)

The District Judge dismissed plaintiff's claims on initial review against WCJ and inmate Sellers, his claims for money damages against the remaining defendants in their official capacities as barred by the Eleventh Amendment, as well as his claims against the remaining defendants to the extent that those claims pertained to their alleged failure to respond to his grievances.  (Doc. 5, pp. 2-3; Doc. 6, p. 2)  The District Judge determined, on the other hand, that plaintiff stated a colorable claim against the remaining defendants for failure to protect under the Eighth Amendment,[1] for violations of his Fourteenth Amendment procedural due process rights, and for changes to his classification level.  (Doc. 5, pp. 3-5; Doc. 6, p. 2)  The District Judge referred this action to the undersigned on April 14, 2015 with the following instruction: "Despite the issuance of process, the Magistrate Judge may *sua sponte* recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2)."  (Doc. 6, p. 3)

Plaintiff filed a second motion to amend on April 17, 2015.  (Doc. 8) The Magistrate Judge granted plaintiff's motions to amend (Docs. 3, 8) on April 21, 2015 (Doc. 11).

Defendants filed a motion to dismiss and supporting memorandum on May 29, 2015.  (Docs. 22-23) Thereafter, plaintiff filed a "Motion for Supplemental Complaint" on July 6, 2015 (Doc. 32),

---

[1]  The initial complaint included claims of cruel and unusual punishment that would have arisen under the Eighth Amendment had plaintiff been a convicted prisoner.  However, plaintiff was a pretrial detainee at the time of the alleged events that gave rise to this action, and apparently remains so to this date.  (Doc. 23, p. 9; Doc. 32, p. 7 of 14; Doc. 37, p. 6)  The Eighth Amendment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979); *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015).  Therefore, plaintiff's claims of cruel and unusual punishment arose under the Fourteenth Amendment, not the Eighth Amendment.  That said, claims brought by pretrial detainees under the Fourteenth Amendment are analyzed under the "same rubric as Eighth Amendment claims brought by prisoners."  *See Villegas v. Metro. Govt. of Nashville, 709 F.3d 563,* 568 (6th Cir. 2013)(citations omitted).

following which he responded to the motion to dismiss on July 15, 2015 (Docs. 34-35). Defendants

filed a response in opposition to plaintiff's "Motion for Supplemental Complaint" on July 20, 2015

(Doc. 37), after which the Magistrate Judge denied plaintiff's motion on November 30, 2015 (Doc.

45). This matter is now properly before the court.

## II.  STATEMENT OF THE CASE

The complaint alleges that plaintiff had a "confrontation" with Officer f/n/u Jakes (*sic*) and

"was called upstairs on 1[0]-7-14[2] to speak with detective[s] . . . and Lieutenant Doug Whitefield"

about the matter.  (Doc. 12, p. 3 of 22)  Plaintiff began to have problems with inmate Sellars soon

thereafter when the latter accused plaintiff of having "snitched on him and his cousin Officer Jakes"

at the meeting.  Inmate Sellars subsequently attacked plaintiff October 16, 2014 with a shank as

plaintiff was walking out of the shower, stabbing and cutting plaintiff  several times (the first

assault).  Plaintiff asserts that "[t]here [wa]s no way that [he and inmate Sellars] were supposed to

be around each other at the same time," because they "were on two different recreation time periods"

at the time.  (Doc. 12, p. 4 of 22)  Plaintiff avers that Officer Denson was supposed to do a security

check and head count before he left at 8:00 a.m.  Although plaintiff does not say so, the inference

is that Officer Denson did not do a security check and head count.

Plaintiff was treated by Nurse Brittany after the first assault.  (Doc. 12, p. 4 of 22)  Plaintiff

asserts that Nurse Brittany was "very rude," he "did not see her wash her hands after treating inmate

. . . Sellars," she did not "properly log [his] wounds," and that "[a]ll she did was wipe[] the one slash

across [his] face."

---

[2]  The original and amended complaints both assert that plaintiff began to have problems with inmate Sellars after plaintiff met with detectives Reich, another detective, and Lt. Whitefield "on 11-7-14." However, this date does not support the subsequent sequence of events alleged. The Magistrate Judge concludes that the date "11-7-14" in the original and amended complaints are clerical errors, and that the meeting with the detectives actually occurred on October 7, 2014. This conclusion is supported by a grievance that plaintiff filed on October 22, 2014 in which he refers to that meeting, setting "[t]he date [he] spoke with the detectives . . . [as] . . . 10-7-14." (Doc. 1-1, p. 23 of 64)

Plaintiff was escorted to segregation by Officer Bennett, who allegedly told plaintiff he would bring him "some Saltine Crackers . . . [and] . . . speak with Lieutenant . . . Whitefield about [plaintiff] taking a shower . . . [to] . . . wash the . . . blood off . . . ."  (Doc. 12, pp. 4-5 of 22) Plaintiff asserts that defendant Bennett did not bring him any Saltines, and that he did not speak with Lt. Whitefield about a shower.  Plaintiff asserts further that had to "initiate" a request for a HIV/Hepatitis test, ask medical to give him a tetanus shot, and that he "told them that [he] was having headaches, dizzy spells, and nerve problems as a result of th[e] incident."

Plaintiff asserts that he was placed in segregation following the first assault "under 'cool downs' in the inmate handbook."  (Doc. 12, p. 5 of 22)  Plaintiff avers that "placing an inmate in cool down . . . should be done in lieu of a disciplinary infraction."[3]  According to plaintiff, this policy was violated because he subsequently "received a disciplinary write up on 10-20-14 four days after the stabbing."[4]  Plaintiff also asserts that disciplinary write ups "are supposed to be written up within 72 hours."[5]  (Doc. 12, p. 6 of 22)

Plaintiff had a preliminary hearing before the Disciplinary Board on October 21, 2014, at which he pleaded not guilty.  (Doc. 12, p. 6 of 22)  The complaint alleges that Lt. Whitefield asked plaintiff subsequently why he did not plead guilty to the infractions, because now he would "get the maximum" and have to appeal.  Plaintiff asserts that Lt. Whitefield's remarks showed he had been found guilty before the hearing.  (Doc. 12, pp. 6-7 of 22)

---

[3]  The copy of the inmate handbook provided with the original complaint supports plaintiff's characterization of "cool down" segregation.  (Doc. 1-1, p. 4 of 64)

[4]  The inmate disciplinary report dated October 20, 2014 shows that plaintiff was charged with assault on an inmate, being found in an unauthorized location, and participating in a fight.  (Doc. 1-1, p. 2 of 64)  Assault on an inmate is a Class A infraction, the other two are Class B infractions.

[5]  Plaintiff asserts that he was in segregation under the "Cool downs" provision of the inmate handbook. However, as noted at n. 4 above, plaintiff was charged with a Class A infraction which, according to that same inmate handbook requires segregation "Pending Disciplinary Hearing," not "Cool downs."  (Doc. 1-1, p. 4 of 64)

Plaintiff avers that Officer Davis took him to booking on October 21, 2014 to speak with Commissioner Swindell about signing a warrant against inmate Sellars. (Doc. 12, p. 7 of 22) Commissioner Swindell allegedly told plaintiff that she could not file charges against inmate Sellars unless the "administration" told her who the aggressor was. Plaintiff alleges that Lt. Whitefield told him on October 23, 2014 that he had spoken with Commissioner Swindell and that, although he did not have a problem with plaintiff signing the warrant, Commissioner Swindell was not going to permit him to. (Doc. 12, p. 8 of 22) Plaintiff asserts, "[s]omebody is lying."

At some point during the events on October 21, 2014 described above, Cpl. Apple allegedly came into booking, began "grabbing and reaching for [plaintiff's] papers," started arguing with plaintiff, and told him "'to just appeal the hearing decision.'" (Doc. 12, pp. 8-9 of 22) Plaintiff asserts that Cpl. Apple's alleged comments again showed again that he "had already been found guilty of the . . . infractions before . . . having a hearing." (Doc. 12, p. 9 of 22)

Plaintiff asserts that he asked Officer Wade on October 22, 2014 to get copies of an inmate request form (subject unknown) that he had written to Sheriff Bryan. (Doc. 12, p. 9 of 12) Officer Wade allegedly agreed, but later told plaintiff that Cpl. Apple would not make the copies. On October 23, 2014, Cpl. Apple allegedly told plaintiff that he did not make the copies because he did not know that they were legal material. Plaintiff asserts again, "[s]omebody is lying!" When plaintiff asked Cpl. Apple if he had given the inmate request form to Sheriff Bryan noted above, Cpl. Apple said he had. (Doc. 12, p. 10 of 22) According to plaintiff, Capt. Bennett showed him the inmate request form later that same day, and told plaintiff he was on his way to give it to Sheriff Bryan. Plaintiff asserts that Capt. Bennett's statement proves that Cpl. Apple lied to him.

Plaintiff met with "Psych Nurse Mary" on October 22, 2014, where they discussed "different options" for medication to steady plaintiff's nerves following the first assault. (Doc. 12, p. 12 of 22) Plaintiff asserts that "Psych Nurse Mary" prescribed Prolixan on October 23, 2014 which, according

to plaintiff, was the "wrong medication." Two days later on October 25, 2014, plaintiff allegedly had an allergic reaction to the Prolixan. Plaintiff asserts that it took "20 minutes or more for the officers to . . . take [him] to medical," even though an inmate trustee allegedly "told the tower operator numerous that [he] was having an allergic reaction . . . ." (Doc. 12, pp. 12-13 of 22)

Plaintiff's disciplinary hearing was held on October 23, 2014 (the first hearing). (Doc. 12, pp. 10-11 of 22) Plaintiff asserts that he did not sign his Miranda rights before the hearing, alleges procedural/conduct discrepancies during the hearing, avers that Lt. Shoemake found him guilty of being in an unauthorized location and fighting, and sentenced him to a total of 22 days in segregation, loss of commissary and visitation rights. (Doc. 12, p. 12 of 22) Plaintiff appealed the decision of the disciplinary board. (Doc. 1-1, pp. 32-35 of 64) Captain Bennett granted plaintiff a "new hearing on the grounds that [his] modified Miranda was not signed." (Doc. 1-1, p. 36 of 64)

Plaintiff had another disciplinary board hearing on October 27, 2014 (the second hearing). (Doc. 12, p. 13 of 22) The hearing officers were Lt. Whitefield and Officer Rolin. Plaintiff again asserts procedural/conduct discrepancies during the hearing. Plaintiff avers that he was given 14 days in segregation, loss of visitation privileges, loss of commissary, and points added to his security classification. Plaintiff appealed the decision from the second hearing. (Doc. 1-1, p. 45 of 64) Captain Bennett noted the following in denying plaintiff's second appeal: "I am giv[ing] you the 4 day credit and you will be out of segregation on 11-1-14. In the future if you are having problems with another inmate please advise staff so we can take steps to prevent these types of incidents." (Doc. 1-1, p. 57 of 64)

Finally, the complaint alleges that plaintiff was in "the law room reading the lawbooks" on November 1, 2014 at the same time inmate Sellars was out of his cell for his scheduled recreation time. Plaintiff asserts that inmate Sellars "pressed the emergency intercom button and had the tower operator 'Officer Smith' open the door to the law room," whereupon inmate Sellars ran into the

room and began punching plaintiff in the face (the second assault). (Doc. 12, p. 14 of 22) Plaintiff avers that "[t]his clearly shows once again that there is a breach in the jail[']s security system as well as [a] lack of duty and . . . communication." Plaintiff asserts that "[t]here [wa]s no way that inmate . . . Sellars was supposed to have been around me or gotten to me under any circumstances after he already stabbed me."

## III. ANALYSIS

### A. Actions Brought Under 42 U.S.C. § 1983

To state a claim under § 1983, plaintiff must allege and show that: 1) he was deprived of a right secured by the Constitution or laws of the United States; <u>and</u> 2) the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *see Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014)(citation omitted).

### B. Motion to Dismiss

An action brought in federal court may be dismissed for failure to state a claim on which relief may be granted. Rule 12(b)(6), Fed. R. Civ. P. In assessing a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and determine "whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Services, Inc.,* 668 F.3d 393, 403 (6th Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A motion to dismiss under Rule 12(b)(6) "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007)(citation omitted).

### 1. Plaintiff's Claims Against Defendants

### in Their Official Capacity

As noted above at p. 2, the District Judge determined on initial review that plaintiff's claims against defendants in their official capacity was barred by the Eleventh Amendment. Eleventh Amendment sovereign immunity pertains to suits for money damages against states, state entities, and/or state officials sued for money damages in their official capacity. *McCormick v. Miami University*, 693 F.3d 654, 662 (6th Cir. 2012)(citing *Will v. Mich. Dept. Of State Police*, 491 U.S. 58, 71 (1989)). The Eleventh Amendment "does not extend to an entity that is not an 'arm of the state,' including municipal and county entities . . . ." or municipal/county employees sued in their official capacity. *Pucci v. Ninteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010)(citation omitted). The defendants in this case are Wilson County officials/employees; they are not state officials/employees. Respectfully – the Eleventh Amendment does not pertain to them or this action.

Notwithstanding the foregoing, the complaint is subject to *sua sponte* dismissal against defendants in their official capacity on other grounds. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" of which the official is an agent, in this case, the County of Wilson. *See Young v. Owens*, 577 Fed.Appx. 410, 417 (6th Cir. 2014)(internal citation omitted); *see also Will*, 491 U.S. at 71. The County of Wilson "'can be liable under . . . § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom,' or if a 'failure to train amounts to deliberate indifference' to such right." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013)(internal citation omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Plaintiff does not allege and show, nor can it be liberally construed from the complaint, that defendants acted according to any policy or custom attributable to the County of Wilson, or that the County of Wilson failed to train them. Indeed, the initial and amended complaints are utterly devoid of any reference whatsoever with respect to the County of Wilson.

Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the courts are not willing to "abrogate basic pleading essentials in *pro se* suits," *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990)). "More than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements." *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)(citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988)). A claim "must 'contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)(quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007)). "The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Grinter*, 532 F.3d at 577 (citation omitted). Conclusory claims are subject to dismissal. *See Ashcroft*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (1995); *Erie County, Ohio v. Morton Salt, Inc.* 702 F.3d 860, 867 (6th Cir. 2012).

Because plaintiff makes no mention whatsoever of the County of Wilson, his claims against defendants in their official capacity are conclusory and subject to dismissal. The complaint should, therefore, be dismissed against all of the defendants in their official capacity for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Plaintiff's Claims Against Defendants In Their Individual Capacity

### a. Allegations of Cruel and Unusual Punishment

Plaintiff asserts that he had been subject to "cruel and unusual punishment all due to breach of security," which the District Judge construed to allege a claim of failure to protect arising from the first and second assaults. (Doc. 12, p. 1 of 22) The Magistrate Judge liberally construes the

following additional cruel and unusual punishment claims that were not addressed on initial review: 1) failure of nurse Brittany to provide adequate medical care following the first assault (Doc. 12, p. 4 of 22); 2) Officer Bennett's alleged failure to get plaintiff some Saltines and to ask for permission for him to take a shower (Doc. 12, pp. 4-5 of 22); 3) having to "initiate" a request for HIV/Hepatitis test, a tetanus shot, and telling "them that [he] was having headaches, dizzy spells, and nerve problems as a result of th[e] incident" (Doc. 12, p. 5 of 22); 4) failure of "Psych Nurse Mary" to provide adequate medical care when she allegedly prescribed the wrong medication (Doc. 12, p. 12 of 22); 5) inadequate medical care when he had an adverse reaction to the medication prescribed by "Psych Nurse Mary" (Doc. 12, pp. 12-13 of 22).

The Eighth Amendment[6] protects inmates by "impos[ing] duties on [prison] officials, who must provide humane conditions of confinement" and "adequate food, clothing, shelter, and medical care and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  An Eighth Amendment conditions of confinement claim contains both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The objective component requires plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him the "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Wilson*, 501 U.S. at 298; *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  The subjective component requires plaintiff to demonstrate that the prison official(s) acted wantonly, *i.e.*, with deliberate indifference.  *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297.

### (1)  Failure to Protect

"The Supreme Court has held that prison/jail "'officials have a duty . . . to protect prisoners

---

[6]  *See* n. 1 at p. 2 above.

from violence at the hands of other prisoners.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6ᵗʰ Cir. 2011)(quoting *Farmer*, 511 U.S. at 844). To state a cognizable claim for deliberate indifference to a prisoner's safety, a prisoner must make a two-part showing: 1) the alleged mistreatment was objectively serious; 2) defendants knew of and subjectively ignored an excessive risk to the prisoner's safety. *Bishop*, 636 F.3d at 766 (citing *Farmer*, 511 U.S. at 834). To establish the objective component of the two-part test, the prisoner "must show that the failure to protect from risk of harm [wa]s objectively 'sufficiently serious,'" *i.e.*, that he was "'incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). To satisfy the subjective component, the prisoner "must show that prison officials acted with 'deliberate indifference' to inmate health or safety." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 834).

### (a) The First Assault

The complaint alleges that plaintiff and inmate Sellars "were on two different recreation time periods in J-Pod . . . [and that] . . . . [t]here is no way that [they] were supposed to be around each other at the same time." (Doc. 12, p. 4 of 22) Although it cannot be determined from the record before the court why plaintiff and inmate Sellars had been assigned to different recreational periods, regardless of the reason, the question remains: "If the two were assigned to different recreational periods, how did the first assault happen?" The amended complaint and supporting documents filed with the original complaint provide the answer to this question.

The amended complaint, and supporting documents filed with the original complaint, show that plaintiff was charged with and convicted of being in an unauthorized location at the time of the first assault. (Doc. 1-1, pp. 2, 30-31 of 64) Plaintiff does not deny the charge, nor does he challenge the conviction except in the context of due process. In other words, it was plaintiff's own misconduct that created the risk of harm to himself, not because he was incarcerated under

circumstances that posed substantial risk of serious harm to him. Accordingly, plaintiff fails to satisfy the objective half of the two-part, failure-to-protect test.

Assuming for the sake of argument it were determined on subsequent review that plaintiff were housed under circumstances that posed substantial risk of harm to him, plaintiff still "must show that prison officials acted with 'deliberate indifference' to [his] health or safety." Plaintiff does not allege, nor can it be liberally construed from the complaint, that any of the defendants acted with deliberate indifference to his health and safety. Moreover, plaintiff does not assert that he discussed inmate Sellars at the meeting on October 7th. On the contrary, plaintiff clearly states: "After I spoke with them inmate . . . Sellars began to have problems with me saying that I snitched on him and his cousin Officer Jakes." If inmate Sellars and plaintiff did not begin to have problems until after the October 7th meeting, then plaintiff could not have raised any concerns about inmate Sellars at that meeting, or to anyone prior to the meeting.

Plaintiff also does not allege, nor can it be liberally construed from the compliant, that plaintiff informed any of the defendants after the October 7th meeting that he had begun having problems with inmate Sellars. That jail officials were unaware of plaintiff's problems with inmate Sellars is supported by Capt. Bennett's October 28, 2014 endorsement of plaintiff's appeal following his second disciplinary hearing – provided by plaintiff himself with his original complaint – in which Capt. Bennett wrote: "In the future if you are having problems with another inmate please advise staff so we can take steps to prevent these types of incidents." (Doc. 1-1, p. 57 of 64) As shown above, the pleadings support the conclusion that none of the defendants were aware that there was hostility between plaintiff and inmate Sellars until after the fact.

As previously noted, plaintiff does aver that Officer Denson, the 3rd shift roving officer, "was supposed to do a security check and head count before he left [at] 8:00 a.m. to make sure that all inmates were secure and accounted for," the inference being that he did not. However, the

complaint provides no factual allegations that would support the notion that Officer Denson acted with the requisite *mens rea* in the context of a failure-to-protect claim, *i.e.*, that his alleged actions amounted to <u>deliberate</u> indifference to plaintiff's health and/or safety as opposed to possible negligence. The law is settled that, absent the culpable mental state, negligence does not give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *League of Women voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008). In short, plaintiff fails to establish the second part of the two-part failure-to-protect test as to Officer Denson.

As shown above, plaintiff has failed to establish the two-part failure-to-protect test with respect to the first assault. Accordingly, this claim should be dismissed because it fails to state a claim on which relief may be granted.[7]

### (b) The Second Assault

As noted above at p. 7, plaintiff asserts that "[t]here [wa]s no way that inmate . . . Sellars was supposed to have been around me or gotten to me under any circumstances after he had already stabbed me," and the fact that he was able to assault plaintiff "clearly shows once again that there was a breach in the jail[']s security system as well as a lack of duty and lack of communication." (Doc. 12, p. 14 of 22)

---

[7] It is appropriate here to address Sheriff Bryan's liability in his supervisory capacity with respect to this claim, as well as plaintiff's other claims. Although the complaint is utterly devoid of any factual allegations against Sheriff Bryan, the complaint could be liberally construed – wrongly – to allege that Sheriff Bryan is liable for the acts and/or omissions of those under his supervision. The same can be said with respect to any of the other defendants who had supervisory authority at WCJ at the time.

The law is well established that liability under §1983 cannot be premised solely on a theory of *respondeat superior*. *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Supervisory officials such as Sheriff Bryan and those in his charge with supervisory authority are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it. *Heyerman*, 680 F.3d at 647. At a minimum, plaintiff must show that the official(s) "'implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Heyerman*, 680 F.3d at 647 (citation omitted). Plaintiff does not allege, nor can it be liberally construed from the complaint, that Sheriff Bryan implicitly authorized, approved, or knowingly acquiesced in the alleged acts and/or omissions of those under his supervision that led to the two assaults, or to the alleged events that gave rise to his other claims. Again, the same can be said for any of the other defendants in Sheriff Bryan's charge with supervisory authority. Consequently, neither Sheriff Bryan nor any of the other defendants is liable in their individual capacity under the doctrine of *respondeat superior*.

It is tempting to take away from the first statement above that, having become aware of the rancor between plaintiff and inmate Sellars following the first assault, the WCJ administration took affirmative steps to keep plaintiff and inmate Sellars apart. Whether the WCJ administration did or not cannot be determined from the record before the court. The only thing that can be determined with certainty is that inmate Sellars was able to assault plaintiff a second time after the WCJ administration had become aware of the bad blood between them. Therefore, the Magistrate Judge assumes without deciding that the conditions under which plaintiff was incarcerated following the first assault posed a substantial risk of serious harm at the time of the second assault, *i.e.*, that the complaint satisfies the objective half of the two-part failure-to-protect test. The next question is wether the complaint satisfies the subjective half of the two-part test.

Plaintiff names a single defendant in connection with the second assault – Officer Smith, the "tower operator." As previously noted above at p. 7, the complaint alleges that "[i]nmate Sellars pressed the **emergency intercom button** and . . . 'Officer Smith' open[ed] the door to the law room" where plaintiff was "reading lawbooks," that "inmate Sellars ran in . . . and began to throw punches at [him]." (emphasis added)

Assuming for the sake of argument that Officer Smith was aware of the bad blood between plaintiff and inmate Sellars, plaintiff does not allege, nor can it be liberally construed from the complaint, that Officer Smith was aware that plaintiff was in the "lawroom," and/or that he realized it was inmate Sellars who "pressed the emergency intercom button." The only discernable factual allegation is that Officer Smith responded to the "emergency intercom button" being pressed. Plaintiff also does not allege, nor can it be liberally construed from the complaint, that the "emergency intercom button" is used for purposes other than emergency situations, or that Officer Smith's response to the "emergency intercom button" being pressed was anything other than a response to a perceived emergency situation. In short, plaintiff has not satisfied the subjective half

of the two-part failure-to-protect test with respect to Officer Smith's alleged actions.

As explained above, plaintiff has failed to establish both parts of the two-part failure-to-protect test with respect to the second assault. Consequently, this claim should be dismissed for failure to state a claim on which relief may be granted.

### (2) Alleged Failure to Provide Adequate Medical
### Care Following the First Assault

The complaint is liberally construed to allege that Nurse Brittany subjected plaintiff to cruel and unusual punishment because she failed to provide him with adequate medical care following the first assault. First, nurse Brittany is not a defendant to this action. Second, the complaint does not allege, nor can it be liberally construed from the complaint, that any of the other named defendants were involved, directly or otherwise, with respect to this claim. Accordingly, this claim should be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### (3) Alleged Failure to Give Plaintiff Saltines and to Get
### Permission for Plaintiff to Take a Shower

The complaint is liberally construed to allege that plaintiff was subject to cruel and unusual punishment because Officer Bennett did not bring him Saltine crackers while in segregation following the first assault, and because Officer Bennett did not speak with Lt. Whitefield to get permission for plaintiff to take a shower.

Plaintiff does not allege, nor can it be liberally construed from the complaint, that Officer Bennett's alleged failure to bring him Saltines denied him the "minimal civilized measure of life's necessities," nor would any right-minded person conclude that Officer Bennett's alleged failure to do so would rise to the level of cruel and unusual punishment under any circumstance. Thus, plaintiff fails to satisfy the first part of the two-part test to establish a violation under § 1983 in the context of this claim. Moreover, plaintiff has made no effort to provide any factual allegations in support of this claim. Consequently, this claim is conclusory as well.

As for the shower, plaintiff does not allege, nor can it be liberally construed from the complaint, that he was not permitted to shower for an unreasonable amount of time after being taken to segregation, that he was forced to endure unsanitary conditions due to the blood on him for an unreasonable length of time, or that he suffered any adverse physical or health effects as a result of Officer Bennett's alleged failure to ask Lt. Whitefield for permission to permit plaintiff to take a shower. Plaintiff alleges only that Officer Bennett did not ask. For these reasons, this part of this claim is conclusory as well.

For the reasons explained above, these claims should be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### (4) Initiating the HIV/Hepatitis Test, Requesting a Tetanus Shot, and Reporting Headaches, Dizziness, and Nerve Problems After the First Assault

The complaint is liberally construed to allege that plaintiff was subject to cruel and unusual punishment because he "had to initiate an HIV/Hepatit[i]s test as well as ask medical to give [him] a tetanus shot," after the first assault, and that he "told them [he] was having headaches, dizzy spells and nerve problems."

Plaintiff does not allege, nor can it be liberally construed from the complaint, that he was not given a HIV/Hepatitis test and/or a tetanus shot, and/or that he was not treated for his headaches, dizzy spells, and nerve problems. Neither does plaintiff allege that he suffered any adverse consequences because of any delay in receiving such tests/treatment, or that any of the named defendants acted to deny him these tests and/or necessary medical care. Finally, plaintiff does not allege that any of the named defendants were involved, directly or indirectly, in the context of these claims.

These claims are conclusory for reasons previously explained. Accordingly, they should be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### (5) Alleged Failure of "Psych Nurse Mary" to Provide Adequate Medical Care on October 23, 2014

The complaint is liberally construed to allege that "Psych Nurse Mary" subjected him to cruel and unusual punishment by prescribing medication that allegedly resulted in plaintiff having an allergic reaction. (Doc. 12, pp. 12-13 of 22) "Psych Nurse Mary" is not a defendant to this action. Moreover, plaintiff does not allege, nor can it be liberally construed from the complaint, that any of the named defendants were involved, directly or otherwise, with the alleged acts and/or omissions of "Psych Nurse Mary." This claim should be dismissed for failure to state a claim on which relief may be granted as to this claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

### (6) Alleged Failure to Provide Adequate Medical Care When Plaintiff Had an Adverse Reaction to Medication Prescribed by "Psych Nurse Mary"

Plaintiff asserts that he had an allergic reaction on October 25, 2014 to the medication prescribed by "Psych Nurse Mary," and that "it took at least 20 minutes or more for the officers to come and get [him to] take [him] to medical," despite an inmate trustee allegedly telling "the tower operator numerous times that [he] was having an allergic reaction." Plaintiff does not identify any of the named defendants in connection with this claim, nor can their identities and/or any alleged acts and/or omissions be liberally construed from the complaint. Accordingly, this claim should be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Due Process

As noted above at p. 2, the District Judge previously determined that plaintiff's procedural due process claim pertained to the disciplinary hearings following assaults, and related changes to his classification level.

Generally speaking, a prisoner-plaintiff cannot show a denial of due process absent an atypical and significant hardship, such as the loss of good-time credits. *See Sandin v. Conner*, 515 U.S. 472, 485-87 (1995); *Guile v. Ball*, 521 Fed.Appx. 542, 544 (6th Cir. 2013); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Although state statutes and regulations may confer a liberty interest on a prisoner, they do so *only* if a loss of that liberty interest "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013). If a prisoner-plaintiff cannot show that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life, then the statute or regulation at issue does not convey a liberty interest, even if it contains unmistakably mandatory language. *Sandin*, 515 U.S. 480-82; *Joseph v. Curtin*, 410 Fed.Appx. 865, 868 (6th Cir. 2010); *Rimmer-Bey*, 62 F.3d at 790-91.

Although, plaintiff makes numerous allegations with due process overtones, it is not necessary to address them individually. The length of time plaintiff was confined to segregation pursuant to the disciplinary proceedings at issue is dispositive. More particularly, plaintiff was placed in segregation on October 16, 2004. Plaintiff was released from segregation on November 1, 2014. These dates show that plaintiff was in segregation for a total of 17 days.

Disciplinary segregation for 17 days does not implicate a protected liberty interest that would entitle plaintiff to procedural protections. *Sandin*, 515 U.S. at 485-87 (holding that a 30-day stay in disciplinary segregation did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Thus, even taking plaintiff's allegations as true, because plaintiff's segregation did not amount to an atypical and significant hardship in relationship to the ordinary incidents of prison life in jail, he cannot establish that his due process rights were violated. As to plaintiff's increased classification level, the law is well established that reclassification to a different security status does not constitute an atypical and significant hardship on him, because a prisoner has no right to a particular security level. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

For the reasons stated above, plaintiff's due process/classification claims should be dismissed for failure to state a claim on which relief may be granted.

### 4. Plaintiff's Equal Protection Claim

The complaint alleges that plaintiff's "equal protection rights have been violated," and that he has "been shown racial discrimination, prejudice and bias . . . ." (Doc. 12, p. 1 of 22)

To state an equal protection claim under § 1983, plaintiff must allege and show that a state actor intentionally discriminated against him because of his membership in a protected class.[8] *See*

---

[8] Although plaintiff does not say whether he belongs to a protected class, the record shows that he is African-American. (Doc. 1-1, p. 2 of 64) African-Americans are members of a protected class for equal protection purposes.

*Umani v. Mich. Department of Corrections*, 432 Fed.Appx. 453 , 458 (6th Cir. 2011)(citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). To support an equal protection claim, plaintiff also must allege and show that defendants intentionally discriminated against him because he is a member of that protected class. *See Brooks v. Knapp*, 221 Fed.Appx. 402, 408 (6th Cir. 2007).

The statements quoted in the first paragraph above are the sum total of the factual allegations with respect to plaintiff's equal protection claim. In short, this claim is conclusory. More particularly, plaintiff does not allege, nor can it be liberally construed from the complaint, that defendants' alleged actions were based on discriminatory intent because plaintiff is an African-American, and/or that he was treated differently than other similarly situated prisoners who were not African-Americans. Consequently, plaintiff's equal protection claim should be dismissed for failure to state a claim on which relief may be granted for the reasons explained above. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Emotional Distress and Mental Anguish

The complaint alleges that plaintiff "endured emotional distress and mental anguish . . . ." (Doc. 12, p. 1 of 22) The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although plaintiff obviously suffered physical injuries at the hands of inmate Sellars, as shown herein, these injuries were not due to any act and/or omission attributable to any of the named defendants. Indeed, as shown above, plaintiff's claims against the named defendants all are without merit. Since defendants are not liable under § 1983 on the grounds alleged, they cannot be liable for any emotional distress and mental anguish stemming from those alleged events. Accordingly,

---

*See Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009).

plaintiff's "emotional distress and mental anguish" claim should be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6. Pain and Suffering

The complaint alleges pain and suffering without any supporting factual allegations and, as such, those claims are conclusory. That said, claims for pain and suffering sound in state tort law.

District courts have broad discretion in exercising supplemental jurisdiction over state law claims based on considerations "judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010)(citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, the district court "may decline to exercise supplemental jurisdiction over a claim . . . [if it has] . . . dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *see Varsity Brands, Inc. v. Star Athletica*, LLC, 799 F.3d 468, 493 (6th Cir. 2015).

As shown above, plaintiff's federal law claims all should be dismissed for failure to state a claim on which relief may be granted. Consequently, the District Judge should decline to exercise the court's supplemental jurisdiction over plaintiff's state law pain-and-suffering claims, 28 U.S.C. § 1367(c)(3), and those claims should be dismissed without prejudice as to any relief to which plaintiff may be entitled in state court.

### III. CONCLUSION AND RECOMMENDATION

The Magistrate Judge **RECOMMENDS** for the reasons explained above that: **1)** defendants' motion to dismiss (Doc. 22) be **GRANTED**; **2)** this action be **DISMISSED WITH PREJUDICE** as to all defendants with respect to plaintiff's federal law claims; **3)** the court **DECLINE TO EXERCISE** its supplemental jurisdiction over plaintiff's state law claims, and those claims be **DISMISSED WITHOUT PREJUDICE** as to any relief plaintiff might be entitled in state court;

**4)** dismissal of this action **COUNT AS A STRIKE** under 28 U.S.C. § 1915(g); **5)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; **6)** any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 17th day of December, 2015.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge